IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD D. MEISINGER,

      Plaintiff,

vs.

Case No. 06-1313-JTM

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

MEMORANDUM AND ORDER

      The present matter arises on plaintiff's appeal (Dkt. No. 11) after a denial of applications made under the Social Security Act. For the following reasons, the court denies plaintiff's appeal.

*I. Factual Background:*

      Plaintiff filed two applications for benefits under the Social Security Act. The first was an application for disability insurance benefits under Title II of the Act, 42 U.S.C. § § 401 *et seq*. The second application was an application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § § 1381 *et seq*. Both applications were filed on August 18, 2003, alleging an onset of disability on October 30, 1999. Plaintiff's applications were denied on January 21, 2004 and upon reconsideration on March 18, 2004. Following the denials, and a hearing on June 29, 2004 and August 29, 2005, Administrative Law Judge ("ALJ") Michael R. Dayton denied plaintiff's application because he found that plaintiff was not

"disabled" as defined in the Act.  The Appeals Council also denied plaintiff's request for a review.  This court's decision reviews the decision of the ALJ, which stands as the final decision of the Commissioner.

The following evidence was presented at the hearing.  Plaintiff was born in 1955 and alleged that he became disabled beginning on October 30, 1999.  In plaintiff's Disability Report, he alleged disability due to back problems, carpal tunnel syndrom, and sleeping problems.  Dr. Schneider, plaintiff's treating physician, completed a Statement of Medical Condition that noted plaintiff had a marked difficulty in standing or walking which was expected to persist for at least 12 months and resulted in severe functional limitation.  He also noted that plaintiff had degenerative joint disease and recommended a restriction of activities.  When Dr. Schneider examined plaintiff on November 17, 2005, he noted that plaintiff was not stable enough to participate in an employment or training program.

Additionally, Dr. Schneider completed a Physical Residual Functional Capacity Assessment.  He opined that plaintiff could occasionally lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour work day, sit less than 6 hours in an 8-hour work day, and was limited in pushing and pulling in the upper and lower extremities, due to his right hand injury and degenerative disc disease in the lumbar spine.  The physician also noted that plaintiff should never climb, balance, stoop, kneel, crouch, or crawl due to his low back pain, and was limited in reaching.  He also found that plaintiff should avoid moderate exposure to noise and fumes, but that generally, plaintiff's symptoms are attributable to a medically determinable impairment.

Dr. Steven B. Jenkins also examined the plaintiff and found that his lumbar flexion was limited to 20 degrees and extension to 0 degrees. Lumbosacral right and left lateral bend were limited to 10 degrees. Furthermore, he found that straight leg raising was positive at 10 degrees while supine. Seated straight leg was negative. Plaintiff's elbow range of motion was normal, as well as his wrists' range of motion. Dr. Jenkins also noted that plaintiff had poor hygiene with multiple skin sores. Plaintiff's grip strength was found to be 50 pounds on the right and 60 pounds on the left. Plaintiff's station was also found to be forward flexed, with his gait low and stiff.

In terms of mental stability, Dr. Jenkins noted that plaintiff's mood was somewhat depressed. Dr. Jenkins also testified that plaintiff could rise from a seated to a standing position, but had difficulty going from a supine to a seated position. The resulting diagnosis was chronic low back pain and chronic narcotic medication use.

Dr. Jenkins further opined that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand/walk and sit 6 hours in an 8-hour work day. Although pushing and pulling were not limited, Dr. Jenkins advised that plaintiff should never climb a ladder, rope, or scaffold and was limited in fingering to frequently. Finally, Dr. Jenkins found that plaintiff was limited as to vibration and hazards such as machinery and heights and should avoid power tools.

Ultimately, the ALJ determined at Step 1 of the sequential evaluation process ("SEP") that plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ determined that the plaintiff was impaired with: chronic back pain, a history of bilateral carpal tunnel syndrome status-post release, a history of diabetes mellitus, a mood disorder/adjustment disorder, a learning disorder, and a personality disorder. The plaintiff's mental impairments caused mild restrictions

of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. The ALJ also determined that plaintiff's diagnosis of narcolepsy, Bipolar II disorder, and ADHD not to be medically determinable impairments.

Additionally, the ALJ found that the plaintiff did not meet or medically equal a listed impairment at Step 3. The ALJ determined that plaintiff could perform medium work with lifting and/or carry 50 pounds occasionally, 25 pounds frequently, sitting, standing and/or walking 6 hours in an 8-hour work day. However, the ALJ recommended that plaintiff should not perform work which requires climbing ladders, ropes, or scaffolds, and that plaintiff was further limited in fine manipulation and should avoid hazards. Finally, the ALJ determined that plaintiff was moderately limited in the ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember and carry out detailed job instructions, maintain personal appearances, and demonstrate reliability.

At Step 4, the ALJ found that plaintiff could perform his past relevant work as a cook helper both as actually performed and as performed in the national economy, as well as commercial and institutional cleaner as performed by the claimant. In addition, the ALJ concluded that the vocational expert testified that 50 percent of the medium job base, 50 percent of the light job base, and 60 percent of the sedentary job base would remain available to the plaintiff.

## II.  Standard of Review:

This court's review of the Commissioner's determination is limited. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992). The responsibility of this court is to determine

whether the decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Reversal is appropriate if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1114.

*III.  Conclusions of Law:*

Under 20 C.F.R. § 404.1512(a), plaintiff must demonstrate that she was unable to work because of a medically determinable impairment which lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404 1512(a). *See also Mathews v. Eldridge*, 424 U.S. 319, 339 (1976); *Barnhart v. Walton*, 535 U.S. 212 (2002) (upholding the Commissioner's interpretation of the statutory definition which requires that the disability, not only the impairment, must have existed or be expected to exist for 12 months).

In demonstrating the existence of a determinable impairment lasting for a continuous period of at least 12 months, the Commissioner's regulations set forth a five-step SEP which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). In steps 1-3, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether she has a medically determinable impairment that is "severe" under the Act, and whether

plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, supt. P, app.1. *Id*.

At step four of the process, the ALJ must address three phases in making a determination. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). The first phase requires an evaluation of the claimant's residual functional capacity (RFC). *Id.* at 1023. The second phase entails an examination of the demands of the claimant's past relevant work. *Id*. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. Specific findings are required at all phases. *Id*.

*A.  Steps One Through Three Challenge:*

Specifically, the plaintiff argues that the ALJ did not properly evaluate the credibility of his subjective complaints and erred by not giving controlling weight to the opinion of Dr. Steven J. Schneider, plaintiff's treating physician.

The court finds that the ALJ properly weighed plaintiff's subjective complaints in accordance with *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). In evaluating plaintiff's subjective complaints, the ALJ must consider fully all evidence relating to the claimant's subjective complaints, including such factors as information and observations by treating and examining physicians and third parties relating to such matters as the duration, frequency, and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication for relief of pain; and functional restrictions. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c). *See also Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (ALJ may consider claimant's daily activities in

determining whether he is entitled to disability benefits); *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ may properly consider what attempts plaintiff has made to relieve his pain, including whether he took pain medication, in evaluating his credibility). Additionally, the ALJ should consider a claimant's persistent attempts to find relief; regular use of crutches or cane; regular contact with a doctor; and the possibility of psychological disorders could combine with physical problems. *See Luna*, 834 F.2d at 165-66. Furthermore, although an ALJ may not reject a claimant's subjective complaints solely because of lack of objective medical evidence, the absence of such evidence to support the degree of severity alleged is an important factor to be considered. *Id.*

In the present case, plaintiff alleged the onset of a disability beginning in October 1999. However, in an October 2003 examination, plaintiff had full range of motion of the lumbar spine, no paraspinous muscle spasm, no difficulty with orthopedic maneuvers, and no asymmetrical reflex, sensory, or motor deficits. Additionally, lumbar spine x-rays were within normal limits and plaintiff did not take prescription medication for this condition. Notably, plaintiff did not take more than over-the-counter medication until March 26, 2004, over four years after the alleged disability onset. *See Noble v. Callahan*, 978 F. Supp. 980, 986 (D. Kan. 1997) (non-aggressive treatment and use of non-prescription pain medication are both inconsistent with a disabling impairment). Moreover, the ALJ also considered that plaintiff had a history of carpal tunnel syndrome, status-post bilateral release surgery. However, plaintiff did not use wrist splints; interosseous atrophy was not noted and dexterity was preserved; Tinel's sign testing provided negative results bilaterally with grip strength on the right of 50 pounds and on the left of 60 pounds; and plaintiff's signature was free flowing and legible. From this evidence, it is

clear that the ALJ properly considered plaintiff's subjective complaints and weighed the complaints properly against the existing objective medical evidence.

      The ALJ also properly considered the subjective evidence in accordance with *Luna*. Specifically, the ALJ considered plaintiff's demeanor at the administrative hearing and accordingly, did not notice pain behaviors from plaintiff at the hearing. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although the ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."). *See also Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Secretary of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (credibility determinations are the province of the ALJ, "the individual optimally positioned to observe and assess witness credibility."). Plaintiff's motivations were also questioned during consultative examinations such as that of T.A. Moeller, Ph.D., who stated that plaintiff's "[m]otivation is seriously questioned." Transcript, at 350-51.

      Although plaintiff argues that the ALJ erred by failing to consider the statements of F. Lewis, an SSA employee who conducted a face-to-face interview, the employee corroborated statements made by other witnesses, including Dr. Boll. Both witnesses observed plaintiff to be poorly groomed. In sum, the court finds that the ALJ properly articulated inconsistencies in discrediting plaintiff's subjective complaints, which are supported by the record.

      The ALJ also properly considered Dr. Schneider's medical opinion.

      "The ALJ is required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions if 'it is well supported by clinical and

laboratory diagnostic techniques and . . . it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quoting *Castellano v. Sect'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)). A physician's statement whether an individual is or is not able to work is a conclusion upon the ultimate issue and is not determinative, although it is evidence, the weight of which depends upon the "extent to which it is supported by scientific and competent medical findings and the extent to which it is consistent with other evidence." *Thompson v. Harris*, 508 F. Supp. 134, 139-40 (D. Kan. 1981).

The ALJ determined that Dr. Schneider's assessment was based on reported symptoms rather than results of testing. Furthermore, Dr. Schneider's treatment notes do not reflect any limitations. Although he prescribed medication for back pain, lumbar spine x-rays taken in October 2003 were within normal limits. Additionally, when referred for a lumbar spine MRI, the results revealed only degenerative disc disease at L5-S1 with a mild diffuse posterior disc bulge at that level, but no focal disc herniation, significant central spinal canal stenosis, or neuroforaminal narrowing.

Plaintiff specifically argues that the holding in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) requires the ALJ to include an additional sentence which states the specific weight he gave the opinion. Under *Watkins*, the Tenth Circuit reversed the district court's decision affirming the Commissioner because the ALJ in *Watkins* failed to offer an explanation for the weight, if any, he gave to the plaintiff's treating physician. However, the present case is not analogous. Specifically, the ALJ stated that Dr. Schneider's opinion was not given controlling weight and articulated specific reasons for discrediting the opinion. Moreover, although plaintiff argues that the ALJ has a duty to recontact Dr. Schneider, the court finds that

9

this alleged obligation is inconsistent with the Tenth Circuit's holding in *White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001). In *White*, the Tenth Circuit held that it is not the rejection of a treating source's opinion that triggers a duty to recontact the physician, but rather it is the inadequacy of the evidence received from the treating source that triggers the duty. The duty was not triggered in *White*, which is similar to the present case, because the ALJ concluded that the opinion was not supported by the record as a whole, *i.e.*, that the opinion rested heavily on the plaintiff's subjective pain complaints, that the opinion was based on less detailed medical examinations than the assessments of consulting physicians, and that the opinion failed to explain the discrepancy between the objective evidence and an increasingly restrictive functional assessment. *Id*.

Additionally, the ALJ also properly rejected the opinion of the nurse practitioner. Under 20 C.F.R. § § 404.1513(a) and 416.913(a), a nurse practitioner is not an "acceptable medical source," who must be afforded substantial weight. Notwithstanding the weight afforded to a nurse practitioner, the ALJ also appropriately rejected the opinion because it was inconsistent with testing and the opinions of two psychologists. Therefore, the court rejects that the ALJ erred in failing to give appropriate weight to plaintiff's treating physician and the nurse practitioner.

B.  Step Four Challenge – Phases Two Through Three:

Finally, plaintiff alleges that the ALJ failed to relate evidence of plaintiff's mental impairment to the RFC and provide the requisite narrative discussion. Second, plaintiff argues that the hypothetical question presented to the vocational expert did not contain moderate limitations in the ability to maintain personal appearance.

10

The ALJ determined that plaintiff retained the RFC to perform medium work with lifting and/or carry 50 pounds occasionally, 25 pounds frequently, sitting, standing and/or walking 6 hours in an 8-hour work day.  However, the ALJ recommended that plaintiff should not perform work which requires climbing ladders, ropes, or scaffolds, and that plaintiff was further limited in fine manipulation and should avoid hazards and vibration.  Finally, the ALJ determined that plaintiff was moderately limited in the ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember and carry out detailed job instructions, maintain personal appearances, and demonstrate reliability.

Contrary to plaintiff's assertion that the ALJ failed to relate evidence of plaintiff's mental impairment in the RFC and provide the requisite narrative discussion, the court finds that the ALJ's decision included discussion of the specific medical facts and non-medical evidence which supports the ALJ's RFC determination.  This decision fully explained and resolved all material inconsistencies in the record, which complies with SSR 96-8p and Agency regulations.  Furthermore, the ALJ's decision is consistent with Dr. Boll's and Dr. Moeller's opinions that plaintiff could perform simple work.

Additionally, the ALJ found that plaintiff could return to his past relevant work as a cook helper and a commercial or industrial cleaner.  Specifically, the ALJ asked the vocational expert to consider an individual which assumed plaintiff's age, education, and past work experience, who read at the second grade level and completed math at the seventh grade level, who could lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand and/or walk for 6 hours of an 8-hour work day, but could not perform work requiring climbing ladders/rope/scaffolds and was limited in fine manipulation.  Furthermore, the ALJ further

requested the vocational expert to assume that the individual should avoid hazards and vibration. The ALJ also asked the vocational expert to consider the limitations outlined by Dr. Moeller including a fair ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember and carry out detailed job instructions, and behave in an emotionally stable manner and demonstrate reliability.

In response, the vocational expert testified that the individual could perform plaintiff's past work as a commercial or industrial cleaner and cook helper. Plaintiff specifically argues that the hypothetical question did not contain moderate limitations in the ability to maintain personal appearance. However, under the relevant regulations, the test for disability is not whether an individual can actually get a job, but whether the claimant has the physical and mental capacity to perform a job. *See* 20 C.F.R. § 404.1566(c); *Glassman v. Sullivan*, 901 F.2d 1472, 1474 (8th Cir. 1990). Plaintiff also argues that because he was age 50 at the time of the decision, the regulations classify him as "closely approaching advanced age." See 20 C.F.R. § § 404.1563(d), 416.963(d). The Medical Vocational Guidelines are not applicable to the present case, however, because the ALJ found that plaintiff could return to his past relevant work and was not required to reach step five of the SEP. Therefore, the court rejects plaintiff's argument. For these reasons, the plaintiff's appeal is denied.

IT IS ACCORDINGLY ORDERED this 31st day of July, 2007, that plaintiff's appeal (Dkt. No. 11) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE